UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:15-CR-3-HAB |
| | ) | |
| DONALD CUPP | ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Petition for Compassionate Release (ECF No. 92). The Government has filed its Response (ECF No. 99), and Defendant has filed his Reply (ECF No. 102). For the reasons set forth below, Defendant's petition will be granted.

**A.   The Offense Conduct**

On January 5, 2015, officers performed a traffic stop on Defendant's vehicle and found five bags of methamphetamine (total weight 134.2 grams), scales, a drug ledger, and other drug paraphernalia. Upon executing a search warrant on his residence, officers found a small amount of methamphetamine, baggies, synthetic marijuana, a lock picking kit, and ammunition. In addition, officers found a pry bar, bolt cutters, and other tools consistent with burglary in Defendant's vehicle.

When interviewed the next day, Defendant became the author of his own demise. He admitted to engaging in progressively larger methamphetamine transactions while ordering the drug every twenty to thirty days from his supplier. Defendant further admitted that, in his most recent purchase, he received nine pounds of methamphetamine, for which he paid $80,000.00. It would be this amount, coupled with the methamphetamine from the initial traffic stop and a small amount from a later arrest, that would form the basis for his base offense level of 36. While his

offense level would be reduced to 33 for his acceptance of responsibility, his criminal history category of VI produced a guideline range of 240 to 293 months.

For reasons more fully set forth in the parties' briefs, the Government recommended, and the Court accepted, a reduced sentence of 151 months' imprisonment. The Court also imposed a term of supervised release of six months thereafter. Defendant is currently housed at FCI Englewood in Littleton, Colorado, with an anticipated release date of October 23, 2024.

**B.    Legal Analysis**

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motion, the Defendant must first demonstrate that he meets the statutory exhaustion. The parties agree that Defendant has done so, allowing the Court to proceed to the merits of the motion.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly before the court. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Accordingly, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn*, 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes.[1] Second, the Court determines whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18

---

[1] However, as *Gunn* made clear, the policy statement's requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to be consistent with "applicable policy statements." And, the Sentencing Commission has not yet issued a policy statement "applicable" to the Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180. !

3

U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

While the parties focus their briefs on the COVID-19 pandemic, the Court sees little reason to go down that path. Application Note 1 to U.S.S.G. § 1B1.13 establishes two ways that an inmate's medical condition can qualify as an extraordinary and compelling reason for release. Those are (1) where the inmate is suffering from a terminal illness, and (2) when an inmate's serious medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." The Court finds that Defendant satisfies the second requirement.

While Parkinson's disease itself if not fatal, it is marked by the progression of symptoms, including loss of balance, dementia, and difficulty swallowing that can be fatal.[2] Defendant's medical records show that his condition has progressed to Stage 3. This stage "marks a major turning point in the progression of the disease."[3] Individuals at this stage are more likely to experience loss of balance and decreased reflexes, resulting in more common fall events. Moreover, Parkinson's "significantly affects daily tasks at this stage."[4]

All these complications are demonstrated in Defendant's medical records. Defendant has developed markedly worse tremors, his fine motor skills have deteriorated, and, by early 2019, he reported multiple falls. He was moved to "no duty," or removed from his job assignment, on August 23, 2019. He has seen consistent increases in his medications intended to treat his Parkinson's disease. He must use a cane to ambulate. At this point, then, his ability to provide self-care has "substantially diminished."

---

[2] https://www.healthline.com/health/parkinsons/stages
[3] *Id*.
[4] *Id*.

Defendant's BOP care level of 3 further supports the conclusion that he has presented extraordinary and compelling circumstances. Someone at Defendant's care level "requires frequent clinical encounters," "takes multiple prescription medications," "may require assistance with some ADLs," and "may require periodic hospitalization." (ECF No. 92 at 30). Once again, the medical records provide ample evidence for the designated care level. Defendant has regular chronic condition care medical encounters, takes a laundry list of medications, and has been hospitalized for surgery. His inability to perform certain ADLs has resulted in a "no duty" designation. Side effects from medications left him too tired to present himself for morning pill line, necessitating a change in his medication regimen. In short, while Defendant maintains the ability to perform some self-care, the evidence shows that his ability to do so has been substantially diminished.

The Court is further concerned by the BOP's apparent inability to address Defendant's medical conditions. As Defendant notes, he was seen by a neurologist in May 2019. The neurologist recommended several tests, including an MRI of the brain. These tests were to be performed as part of an evaluation of Defendant's medication. These tests have not occurred. Defendant's diabetes has also progressed significantly, with his A1C and blood sugar values increasing out of the healthy range. Notably, much of Defendant's medical deterioration has occurred since his transfer to FCI Englewood. Whatever the reason, FCI Englewood has not, or cannot, treat Defendant's myriad medical conditions.

The Government does not dispute any of the above. Rather, it asserts that "it is nevertheless appropriate for this Court to deny release because the defendant has committed a serious offense and because he has served an insufficient amount of his sentence." (ECF No. 99 at 17). The Court is sympathetic to the Government's argument. Defendant's offense conduct is recounted, in part,

above. The amount of methamphetamine received in the last shipment alone would put Defendant in the upper echelon of meth dealers this Court has seen. Defendant had fourteen prior criminal convictions, seven of which were not included in the calculation of his criminal history score. By all accounts, Defendant is not a model citizen. Moreover, by Defendant's own admission, he has served approximately 55% of his sentence, leaving a significant portion of his sentence left to be served.

At the same time, the Court has difficulty concluding that Defendant poses a risk to society at this point in his life. The Court agrees with Defendant's characterization of his criminal history as being consistent with addict behavior; his rap sheet is full of non-violent property crimes and substance offenses. He is sixty-four years old with a laundry list of significant medical conditions. Perhaps most importantly, Defendant has experienced what should be his most powerful reason to turn his life around, that being the death of his son to a drug overdose. While there can be no guarantee that Defendant does not recidivate, the Court concludes, on the basis of the factors listed in 18 U.S.C. § 3142(g), that he does not pose a danger to people in the community.

**C.     Conclusion**

For the foregoing reasons, Defendant's Petition for Compassionate Release (ECF No. 92) is GRANTED. His previously imposed sentence of imprisonment of 151 months is reduced to time served. Defendant shall be placed on supervised release for a term of three years. *See* 18 U.S.C. § 3582(c)(1)(A) (permitting the court to impose a term of supervised release "that does not exceed the unserved portion of the original term of imprisonment"). The terms of Defendant's supervised release shall be the same as those imposed in his Judgment in a Criminal Case (ECF No. 85), with the additional term that the first year of Defendant's supervised release will be served under conditions of home detention with GPS monitoring.

This order is stayed for up to fourteen days, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure his safe release. Defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure his safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

SO ORDERED on March 23, 2021.

        s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT